UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PHYLLIS HOENSTINE, )<br>        Plaintiff, )<br>  )<br>    vs. )<br>  )<br>CITY OF INDIANAPOLIS POLICE )<br>DEPARTMENT, )<br>        Defendant. ) | 1:05-cv-0543-RLY-TAB |

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Phyllis Hoenstine, filed this action against her employer, the City of Indianapolis Police Department ("IPD" or the "department"), alleging gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. IPD now moves for summary judgment. For the reasons explained below, the court **GRANTS** the motion.

**I.    Summary Judgment Standard**

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

A genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the particular issue.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Eiland v. Trinity Hosp.*, 150 F.3d 747, 750 (7th Cir. 1998).

On a motion for summary judgment, the burden rests with the moving party to demonstrate "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  After the moving party demonstrates the absence of a genuine issue for trial, the responsibility shifts to the non-movant to "go beyond the pleadings" and point to evidence of a genuine factual dispute precluding summary judgment.  *Id*. at 322-23.  "If the non-movant does not come forward with evidence that would reasonably permit the finder of fact to find in her favor on a material question, then the court must enter summary judgment against her."  *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 585-87; *Celotex*, 477 U.S. at 322-24; *Anderson*, 477 U.S. at 249-52.

## II.     Evidentiary Objections

Plaintiff's Complaint alleges that IPD discriminated against her because of her gender. (Amended Complaint ¶ 9).   "Specifically, IPD has regularly transferred male lieutenants with less time in service, less time in grade, and with otherwise less experience to positions that Plaintiff has applied for and been denied."  (Amended Complaint ¶ 10).  In her Response brief, Plaintiff discusses a number of issues that were not raised in her Complaint.  First, she alleges that IPD's failure to post positions or its

use of the chief of police's administrative discretion was discriminatory.  Second, she alleges violations of a federal consent decree between the City of Indianapolis and the U.S. Department of Justice.  Third, she alleges that she was denied training opportunities or that her duties were taken away from her because of her gender.  Issues not raised on a plaintiff's complaint may not be presented for the first time in a brief in opposition to a motion for summary judgment.  *Framsted v. Municipal Ambulance Service*, 347 F.Supp.2d 638, 652 (W.D. Wisc. 2004) (citing *Griffin v. Potter*, 356 F.3d 824, 830 (7th Cir. 2004)); *see also Whitaker v. T.J. Snow Co.*, 151 F.3d 661, 664 (7th Cir. 1998).  Therefore, the court will limit its focus to the issue of whether Plaintiff was denied her requests for lateral transfers because of her gender.

IPD also moves to strike ¶¶ 9, 10, 12, 13, and 18 of Plaintiff's affidavit.  IPD argues that these paragraphs contain statements allegedly made by IPD officers, and should be stricken as inadmissible hearsay.  The court generally agrees.  But even if these statements were not hearsay, they are precluded by the statute of limitations (see below). Accordingly, the court hereby strikes ¶¶ 9, 10, 12, 13, and 18 of Plaintiff's affidavit.

In addition, IPD moves to strike ¶¶ 4, 6, and 7 of the affidavit of Plaintiff's husband, Sgt. John Hoenstine, on grounds that these paragraphs contain inadmissible hearsay.  The court agrees.  Moreover, the statements made by Lieutenant Michael Price, in which he told Hoenstine "that the reason [his] wife wasn't getting the transfer positions she sought was because she was a woman," *see* ¶ 4, is not material because Lieutenant Price was never in a position to be able to preclude or permit Plaintiff's transfers.  The

court also finds that ¶¶ 6 and 7, in which Hoenstine alleges he was denied a promotion as a result of Plaintiff's grievance, is contrary to Plaintiff's deposition testimony. Indeed, Plaintiff admitted that Hoenstine was not promoted because the promotion list containing his name expired. (Plaintiff Dep. at 78). Accordingly, the court strikes ¶¶ 4, 6, and 7 of Hoenstine's affidavit.

Finally, IPD argues that only two of the allegations regarding her denial of transfer claim are timely; those being the June 2004 training academy position given to Lieutenant Charles Briley and the November 2004 Planning and Research Section Supervisor position given to Lieutenant Michael Luckett.

It is well-settled that a plaintiff must file an EEOC charge within 300 days of the alleged unlawful employment practice. *Kruger v. Principi*, 420 F.Supp.2d 896, 906 (N.D. Ill. 2006). Her EEOC charge of discrimination was filed on September 2, 2004. (Defendant's Ex. 17). Thus, the allegations of denials of transfers in 2000 and 2002 are outside the scope of the statute of limitations. Accordingly, the court's opinion will only address those allegations which are timely.

**III.    Factual Background**

    **A.    Plaintiff's Employment with IPD**

1. Plaintiff began her employment with IPD on July 29, 1983. (Amended Complaint ¶ 7).
2. Plaintiff received her Bachelor's Degree in Business Administration in 2004, and has attended approximately 95 separate training courses covering traditional law

enforcement subjects and more specialized subjects such as obscenity and the law, counter-intelligence, child sexual abuse, and the like. (Plaintiff Dep. at 25-26; Plaintiff's Ex. 21).

3. On May 17, 2000, after her successful completion of IPD's promotion process, she was promoted to the rank of lieutenant. (Plaintiff Dep. at 20).

4. Upon her promotion to lieutenant, she was assigned to the position of Late Shift Supervisor, North District. (Plaintiff Dep. at 22).

5. At the time Plaintiff was promoted to lieutenant, there were eight other employees promoted. Of the eight people, two of them were female. (Plaintiff Dep. at 21).

6. In August 2000, Deputy Chief Reardon, a commanding officer, approached Plaintiff and asked her if she would be interested in the position of Neighborhood Resource Officer ("NRO") Detective Lieutenant. She accepted the offer, and remained in that position until January 2003. (Plaintiff Dep. at 19).

7. In August 2001, Chief Deputy Bill Reardon approached Plaintiff and offered her the position of Field Lieutenant for the Weed & Seed/Community Policing unit. The Weed & Seed/Community Policing unit was one of three units in the NRO position. Plaintiff accepted the assignment. (Defendant's Ex. 4; Plaintiff Dep. at 15-17).

8. On January 18, 2003, Chief Deputy Reardon offered Plaintiff the position of North District Detective Lieutenant, and she accepted. (Defendant's Ex. 4; Plaintiff Dep. at 11-12).

9. On December 29, 2003, Plaintiff submitted two Requests to Transfer into the positions of Training Section Supervisor ("Training Supervisor") and Planning and Research Section Supervisor. (Defendant's Exs. 11, 12).

10. Neither of these positions were vacant at the time of her requests and did not become vacant until June 2004 and January 2005, respectively. (Defendant's Ex. 8).

11. On June 19, 2004, the Training Supervisor position was filled by Lieutenant Charles Briley. (Defendant's Ex. 8).

12. Selection to be a trainer at the Training Academy depends, at least in part, on an applicant's longevity, prior experience, and teaching or training experience. (Deposition of Deborah Saunders ("Saunders Dep.") at 77-78).

13. Lieutenant Briley was promoted to the rank of lieutenant on June 18, 2003, and received a G.E.D. from Arlington Heights School in 1976. (Plaintiff's Ex. 31).

14. However, Briley had extensive experience in training and had already been previously assigned to the academy. (*See* Defendant's Ex. 41).

15. On August 16, 2004, Plaintiff filed a formal grievance with Sergeant Bruce Henry, the Affirmative Action Officer, alleging gender discrimination. (Defendant's Ex. 14).

16. As part of her grievance, she identified 10 IPD officials who she believed had discriminated against her. They are: Captain Patricia Young (retired), Major Deborah Saunders, Major John Ball, Deputy Chief E. Tim Foley, Deputy Chief

6

        Bill Reardon (retired), Deputy Chief Richard Benton, Deputy Chief James Reno, Assistant Chief Michael Spears, Chief of Police Jerry Barker, and Director of Public Safety, Robert Turner. (Defendant's Ex. 14).

17. In her grievance, she cited a comment made by Chief Barker at her graduation ceremony in May 2000, in which Chief Barker referred to Plaintiff's previous assignment as the obscenity investigator in the Vice Branch, and a sexually-charged joke made by Major Steven Garner in a training session in December 2001. She also complained that her requests for transfer were not granted and/or that she was not considered for certain positions (*i.e.*, Planning and Research, etc.), and that IPD filled these positions with men who had less qualifications and experience than she. (Defendant's Ex. 14).

18. On September 2, 2004, Plaintiff filed her charge of discrimination with the EEOC, alleging a denial of lateral transfers. (Defendant's Ex. 17).

19. On October 1, 2004, IPD denied her grievance based on the fact that aside from the two inappropriate comments made in 2000 and 2001, there was no indication of a "comprehensive, collective and all encompassing scheme" to thwart her transfer attempts. (Defendant's Ex. 16).

20. On November 8, 2004, Plaintiff learned that Chief Barker had offered Lieutenant Michael Luckett the Planning and Research position she had been seeking. (Plaintiff Aff. ¶ 20).

21. Lieutenant Luckett had more time in grade than Plaintiff. However, he had no

prior experience in the Administrative Division, which has jurisdiction over Planning and Research. (Plaintiff Aff. ¶ 20).

22. In June 2005, the Planning and Research position was posted for competitive bidding as an Open Position. IPD awarded Plaintiff the position on July 26, 2005. (Defendant's Ex. 8).

23. At that time, the Planning and Research position included responsibility for a Domestic Preparedness Unit (Homeland Security). (Plaintiff Aff. ¶ 21; Saunders Dep. at 170-71; Defendant's Ex. 32).

24. The Domestic Preparedness Unit is concerned with domestic terrorism, intelligence and responding to natural disasters. (Saunders Dep. 171-72).

25. At the time that Plaintiff assumed her new position and responsibilities as Planning and Research Section Supervisor, IPD posted a new position called Emergency Preparedness Liaison, a position ultimately given to Lieutenant Dennis Peters, an IPD officer who had competed against Plaintiff for the Planning and Research Section Supervisor position. (Saunders Dep. at 172; Plaintiff Aff. ¶ 22).

26. Lieutenant Peters therefore assumed the functions of the Domestic Preparedness Unit that were initially included as a part of the job responsibilities of the Planning and Research Section Supervisor. (Plaintiff Aff. ¶ 22; Saunders Dep. at 176-77).

27. Chief Barker testified that because the department saw the functions of the Planning and Research Section Supervisor to be too much for one person, the department had been in conversation for approximately two years about changing

        the structure and responsibilities of the Planning and Research position. (Deposition of Jerry Barker ("Barker Dep.") at 154-55, 158; Saunders Dep. at 173).

28. On April 14, 2005, Plaintiff filed her Complaint alleging that she has consistently been denied lateral transfers since May 2000 because of her gender.

      **B.**     **IPD's Practices, Policies and Procedures**

29. When an IPD officer is promoted, the department determines where the officer will be placed. (Plaintiff Dep. at 21).

30. This practice applies to everyone who is promoted, both male and female. (Plaintiff Dep. at 22).

31. Pursuant to General Order 1.01, Section III(A), the department does not have to post all of its available positions. (*See* Defendant's Ex. 10).

32. IPD may handle transfer and reassignments by either posting a vacancy or simply filling it at the chief of police's administrative discretion without posting. (*See* Defendant's Ex. 10, Section J and Defendant's Ex. 18, Article IV, Sections 8 and 9).

33. Positions of lieutenant and higher were commanding rank positions, and served in that capacity at the pleasure of the chief of police. (Barker Dep. at 45).

34. The department considered lieutenants and higher to be part of upper management, and therefore, positions where the chief of police would more likely exercise his discretion (or designate the authority to another commanding officer) in making

9

assignments. (Saunders Dep. at 36). In practice, the chief of police would allow those commanding rank officers to make transfer and reassignment decisions under his discretion. (Barker Dep. at 39-41).

35. The 1999-2002 union agreement between the City of Indianapolis and the Fraternal Order of Police, Lodge #86 ("FOP contract") also did not require the posting of all available positions. (*See* Defendant's Ex. 19, Article IV, Section 8).

36. On June 11, 2004, a new FOP contract was signed, implemented, and applied retroactively to January 2003. (*See* Defendant's Ex. 18). This contract included provisions which allowed for a posting process for the positions of lieutenants and below, but continued to allow the chief to exercise his discretion with respect to all positions. (*See* Defendant's Ex. 18, Article IV, Sections 8 and 9).

37. From August 2001 to September 2005, there were approximately 112 positions filled for the positions of lieutenant and higher that were not posted. (*See* Defendant's Ex. 4). Approximately 10% of those positions went to female officers. (*Id.*). The department is comprised of approximately 13% women. (Saunders Dep. at 160-61).

38. A lieutenant's salary is determined by the FOP contract. (Plaintiff Dep. at 24; Defendant's Ex. 19).

39. In addition, compensation increases, pension matters, and benefits are all provided for in the FOP contract and apply to all officers uniformly, with variations based on years of service and rank. (Defendant's Exs. 18 and 19).

**IV.     Discussion**

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating against an employee with respect to her compensation, terms, conditions, or privileges of employment because of such employee's gender. 42 U.S.C. § 2000e-2(a)(1). Because Plaintiff does not have any direct evidence of discrimination, she must proceed under the indirect method. Under that method, a plaintiff must first establish a prima facie case of gender discrimination. *Bratton v. Roadway Package System, Inc.*, 77 F.3d 168, 175 (7th Cir. 1996). An employee can establish a prima facie case by showing that: (1) she was a member of a protected group; (2) she was meeting her employer's legitimate expectations; (3) despite adequate job performance, she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated members outside of the protected group. *Markel v. Board of Regents of the University of Wisconsin System*, 276 F.3d 906, 911 (7th Cir. 2002).

If established, a prima facie case creates a rebuttable presumption of discrimination, and the employer then has the burden of production to articulate a legitimate, nondiscriminatory reason for its actions. *Simmons v. Chicago Board of Education*, 289 F.3d 488, 492 (7th Cir. 2002). The burden then shifts back to the plaintiff to show that the reason offered by the employer was not the real reason for the challenged action, but merely a pretext. *Johnson v. University of Wisconsin-Eau Claire*, 70 F.3d 469, 478 (7th Cir. 1995).

IPD argues that Plaintiff cannot establish her prima facie case because she cannot

prove that she suffered an adverse employment action or that she was treated less favorably than similarly situated male employees.

## A. Adverse Employment Action

Plaintiff complains that she was denied lateral transfers that males with less time in service, less time in grade, and with otherwise less experience received. She further complains that IPD "repeatedly failed to grant her transfer requests to positions with prestige, recognition, and career enhancing potential." (Plaintiff's Response at 26).

As a general proposition, the failure to transfer an employee to a lateral position is not an adverse employment action. *See O'Neal v. City of Chicago*, 392 F.3d 909, 911-12 (7th Cir. 2004); *Stutler v. Illinois Dept. of Corrections*, 263 F.3d 698, 702 (7th Cir. 2001); *Williams v. Bristol-Meyers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996); *see also Bailey v. Canan*, 82 F.Supp.2d 966, 980-81 (S.D. Ind. 2000). This is because "a purely lateral transfer, which "does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action." *Williams*, 85 F.3d at 274. "A transfer involving no reduction in pay and no more than a minor change in working conditions is insufficient to establish an adverse employment action." *Lewis v. City of Chicago Police Dept.*, 428 F.Supp.2d 783, 796 (N.D. Ill. 2006) (citing *O'Neal*, 392 F.3d at 911-12. A transfer that "could be considered a demotion [] may be considered an adverse employment action." *Palasti v. Federal Express Corp.*, 2003 WL 21003693, at *5 (N.D. Ill. 2003) (citing *Collins v. Illinois*, 830 F.2d 692, 704 (7th Cir. 1987)). This type of transfer is actionable if it prevents the employee from "'using h[er] skills in which [s]he is

12

trained and experienced, so that the skills are likely to atrophy and h[er] career is likely to be stunted.'" *Palasti*, 2003 WL 21003693, at *5 (quoting *Herrnreiter v. Chicago Hous. Auth.*, 315 F.3d 742, 744 (7th Cir. 2002). *See also Lewis*, 428 F.Supp.2d at 796 (applying same analysis to plaintiff's denial of transfer claim).

The undisputed evidence reflects that pursuant to the FOP contract, the lateral transfers which Plaintiff sought would not have amounted to a change in rank, pay, seniority, or benefits. Although the positions would have required her to work on different types of cases, there is no evidence that the lateral transfers she sought would have affected her working conditions in any significant way. Likewise, there is no evidence that the skills she acquired through training and experience were compromised by the fact that she was not granted the transfer requests she sought.

Plaintiff attempts to raise an issue of fact by arguing that IPD consistently denied her "transfer requests to positions with prestige, recognition, and career enhancing potential." (Plaintiff's Response at 26). The only transfer which arguably had potential to enhance her career was the position of Planning and Research Section Supervisor. Although Plaintiff applied for that position on previous occasions, the department did in fact award her that transfer in July 2005. Plaintiff emphasizes the fact that she only received this position after she filed a grievance and an EEOC charge. What this has to do with her denial of transfer claim is not clear. What is clear, however, is the fact that a significant amount of time passed between the filing of her grievance in August 2004 and her EEOC charge in September 2004, and her transfer in July 2005. Thus, her attempt to

13

show a temporal connection (and thus a discriminatory animus) between the two incidents fails.

Plaintiff also contends that as soon as she was placed into the position of Planning and Research Section Supervisor in July 2005, IPD changed the job duties associated with that position and awarded all of the "high profile" job duties to Lieutenant Peters. Again, this is not particularly germane to her denial of transfer claim. That said, the only evidence she has for this proposition is the testimony of Major Saunders:

> Q: Okay. At the time Lieutenant Hoenstine applied for the position, the job included, I understand, a unit, what they call domestic preparedness unit, I guess homeland security unit.
>
> A: Yes. Uh-huh.
>
> . . .
>
> Q: - - the idea of - - so this is a fairly high profile responsibility, I would think.
>
> A: Highly profile, I - - I guess it's a matter of opinion whether you want to say it's -
>
> Q: Well - -
>
> A: profiled or not.
>
> Q: Well, I mean, you know - - you know, there's a lots of talk about terrorism and - - and that type of thing. I would think that it would be fairly important function that would get a lot of attention either for attracting money, for funding training and that type of thing. That's what I'm getting at.
>
> A: Well, based on that, yes.

(Saunders Dep. at 171-72; *see also* Barker Dep. at 135 (testifying that the domestic

preparedness position of Lieutenant Peters was not high profile). Major Saunders' testimony does not lead to the conclusion that the job duties which were given to Lieutenant Peters inhibited Plaintiff's future career opportunities in any significant way, nor diminished her job duties to the extent that one reasonably could conclude that she had effectively been demoted. For these reasons, the court finds that Plaintiff is unable to show that she suffered an adverse employment action.

### B. Similarly Situated Males

Plaintiff argues that her comparators are the men who were transferred and/or placed into the positions she sought. In determining whether two employees are similarly situated, a court must look to all relevant factors. *Radue v. Kimberly-Clark Corp.*, 219 F.3d 617-18 (7th Cir. 2000). In a disciplinary case, this generally "entails a showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Id.* In a denial of transfer case, the same general comparisons must be made, although an evaluation of the employees' conduct is not relevant. *Id.* at 618. "In a failure to transfer case . . . an employee need not show complete identity in comparing [her]self to the better treated employee, but [s]he must show substantial similarity." *Id.*

IPD argues that Plaintiff benefitted from the department's use of its "administrative discretion" policy. In 2000, she received the position of NRO; in 2001, she received the Weed & Seed Community Policy position; and in 2003, she received the

North District Lieutenant position.  IPD further points out that the department is 13% women, including patrol officers.  Of the 112 positions of lieutenant and higher that were granted without a posting process, approximately 10% went to women.

IPD also argues that with regard to the two positions that fall within the statute of limitations, Plaintiff was not the best qualified person for those positions.  First, the Training Academy position Plaintiff sought in December 2003 was given to Lieutenant Briley, who had more experience in training and had already been assigned to the academy as such.  (*See* Defendant's Ex. 41).  Moreover, as Plaintiff admits, Lieutenant Luckett, who received the Planning and Research Section Supervisor position in November 2004, had more time in grade than she did.  (*See* Plaintiff's Response at 9).  The court therefore finds that Plaintiff cannot show substantial similarity with her male comparators.

### C.  Pretext

In order to show pretext, Plaintiff must show that IPD's reason is a lie or completely lacks a factual basis.  *Jordan v. Summers*, 205 F.3d 337, 343 (7th Cir. 2000).  "Even if the reasons for [Plaintiff's] non-selection were mistaken, ill-considered or foolish, so long as [IPD] honestly believed those reasons, pretext has not been shown."  *Id*.

IPD contends that it used its administrative discretion in a nondiscriminatory manner when it made its decisions denying her transfers.  Plaintiff did not address the issue of pretext in her Response brief.  The court therefore finds that IPD's legitimate

non-discriminatory reason for its decision to deny her transfer requests stands. Plaintiff's gender discrimination claim is therefore dismissed.

## V.   Conclusion

For the reasons set forth above, the court **GRANTS** IPD's Motion for Summary Judgment (Docket # 36).


**SO ORDERED** this   8th    day of January 2007.


_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Electronic Copies to:

Robin C. Clay
OFFICE OF CORPORATION COUNSEL
rclay@indygov.org

Allison Wells Gritton
OFFICE OF CORPORATION COUNSEL
agritton@indygov.org

Stephen Arthur Gross
steveagross@sbcglobal.net

Robert S. Rifkin
MAURER RIFKIN & HILL P C
rrifkin@mrhlaw.com